UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| HAIDER AL-JAYASHY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 1:04-CV-250 TLS-RBC |
| ) | |
| PREFERRED SOURCING, INC. ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This employment matter is before the Court on Defendant Preferred Sourcing, Inc.'s Motion for Summary Judgment. [DE 26]  Plaintiff Haider Al-Jayashy, an Arab-American who was born in Iraq, asserts that he was the victim of racial and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.  Defendant Preferred Sourcing, Inc. ("PSI") has moved for summary judgment on all claims and on Al-Jayashy's demand for punitive damages.  For the reasons set forth below, PSI's motion for summary judgment is denied.

**FACTUAL BACKGROUND**

Al-Jayashy is Arab-American and he was born in Iraq.  He worked for PSI from February 2001 until April 2003.  PSI specializes in detecting and containing non-conforming parts used in the automobile and other industries.  Among other things, PSI inspects and sorts parts for automobile part suppliers and manufacturers.  Although PSI is based in Greenfield, Indiana, Plaintiff worked out of PSI's Fort Wayne office under the supervision of Kirk Smith.

Plaintiff started working with PSI in the summer of 2000 through a temporary employment agency. Plaintiff became a PSI employee in February 2001. His starting wage was $10 per hour. Plaintiff worked as an inspector associate, which required him to inspect and sort parts. In June 2001, Plaintiff received a raise. A few months later, he became a team leader. In December 2001, Plaintiff received another raise which increased his wage to $12 per hour.

Near the end of 2001, PSI reassigned Plaintiff from its Dana customer facility to TI Automotive. TI Automotive makes automobile parts for General Motors and uses supplies from Visteon (a separate company) to assemble those parts. At TI Automotive, Plaintiff inspected parts that Visteon supplied to TI Automotive. Around this time, Plaintiff became a member of PSI's "Visteon team."

In late summer 2002, Plaintiff became a U.S. citizen. Ed Chambers, PSI's Plant Manager, attended the ceremony. In addition, PSI gave Plaintiff an American flag and a congratulatory letter.

In November 2002, Plaintiff received another merit-based raise of $.50 per hour. Around the same time, Kirk Smith had a disagreement with the quality manager at TI Automotive and was no longer allowed at the facility. Plaintiff believes that Smith became jealous of Plaintiff's position at TI Automotive.

At some point during Plaintiff's employment, his relationship with Smith began to sour. Plaintiff describes several incidents involving Smith. For instance, on September 11, 2001, Plaintiff was away from work due to knee surgery. When Plaintiff returned to work the next month, Smith asked Plaintiff if he had gone to New York City to blow up the towers. Smith also asked Plaintiff on multiple occasions why Iraqis treated women badly and "beat them up." Regarding the war in Iraq, Smith told Plaintiff that the United States should "drop the mother bomb" on Iraq and "kill

2

everybody in Iraq." In addition, Smith once suggested to Plaintiff that he have a "threesome" with an American woman and an Iraqi woman.

On Friday, April 4, 2003, Plaintiff received an urgent call from someone at Visteon. Visteon told Plaintiff that it was having a problem with certain parts that Visteon had supplied to TI Automotive. TI Automotive wanted PSI to conduct a sort of those parts over the weekend but the sort required a device that was located in Detroit, Michigan. Visteon asked Plaintiff if he would drive to Detroit on Saturday morning to pick up the device. Plaintiff obliged. However, Plaintiff never advised Smith or anyone else at PSI of the emergency trip to Detroit.

On Saturday, April 5, early in the morning, Plaintiff drove to PSI's Fort Wayne facility to get a company car for the trip to Detroit. Plaintiff drove the company car to Detroit, picked up the device, drove the company car back to Fort Wayne, and returned the car to PSI that same evening. According to Plaintiff, he had no prior plans to go to Detroit that weekend and did not make any personal trips with the company car that day.

On Sunday, April 6, Smith called Plaintiff and told him he had noticed a car was missing from the company lot on Saturday. Smith asked Plaintiff if he had taken a car that day. Plaintiff told Smith what had happened. Smith responded that he could have thought the company car was stolen. Plaintiff then asked Smith, if he thought that to be the case, why Smith did not report it to the police. Smith became upset and terminated Plaintiff over the phone.[1]

On Monday, April 7, Plaintiff went to PSI but later than his usual start time. Plaintiff met with Ed Chambers, PSI's Plant Manager and Kirk Smith's boss. Chambers talked to Plaintiff about

---

[1] PSI denies terminating Plaintiff's employment. PSI maintains that Plaintiff left PSI voluntarily.

why he had taken the company car to Detroit without telling Smith or anyone else at PSI. Chambers then confirmed that Plaintiff had been fired for failing to follow procedures regarding the use of company vehicles. At the time, PSI did not have a written policy regarding the use of company cars.

Like Plaintiff, Stacy Larmon and Franklin Smith were Inspector Associates at PSI working under Smith's supervision. Both Larmon and (Franklin) Smith had used a company car for personal reasons without (Kirk) Smith's permission. Neither Larmon nor Franklin Smith were fired for their conduct. Both Larmon and Smith are "Caucasian Americans."

After leaving PSI, Plaintiff applied for work with numerous employers. On several of his applications, Plaintiff affirmed and/or certified that he had resigned or quit his employment at PSI. With respect to one of the applications, an agent of the potential employer advised Plaintiff to write that he resigned from PSI even though he had been fired.

## PROCEDURAL BACKGROUND

Plaintiff filed suit in Allen County Superior Court on June 4, 2004. His complaint alleges race and national origin discrimination under Title VII and 42 U.S.C. § 1981. Plaintiff also seeks punitive damages against PSI. On June 28, 2004, PSI removed the case based on federal question jurisdiction. On August 22, 2005, PSI moved for summary judgment.

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The initial burden rests with the party seeking summary judgment to demonstrate an absence of evidence to support the position of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must then set forth specific facts showing there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Celotex*, 477 U.S. at 323-24. In making this determination, the Court must draw every reasonable inference from the record in the light most favorable to the non-moving party. *Rudin v. Lincoln Land Cmty. College*, 420 F.3d 712, 719 (7th Cir. 2005).

**B.     PSI's Arguments**

PSI seeks summary judgment on several grounds. First, PSI argues that Plaintiff is estopped from claiming an adverse employment action because he represented in later job applications that he resigned from PSI. Second, PSI contends that Plaintiff cannot establish discrimination using either the direct or indirect method. According to PSI, Plaintiff has failed to present direct or circumstantial evidence of discrimination under the direct method. PSI

5

asserts that Plaintiff cannot make a *prima facie* case under the indirect method because there is no evidence that similarly-situated employees outside the protected class were treated more favorably.  Even if Plaintiff can make a *prima facie* case of discrimination, PSI contends it had a legitimate, non-discriminatory reason for terminating Plaintiff and that Plaintiff has not shown that the reason was a pretext.  Finally, PSI argues that Plaintiff abandoned his race discrimination claim because his response brief refers only to his national origin claim.  The Court addresses these arguments in order.

**C.     Estoppel**

To establish a *prima facie* case of discrimination, Plaintiff must show that he suffered an adverse employment action.  *Bio v. Fed. Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005). According to PSI, Plaintiff is estopped from claiming he was terminated in this case because he represented in later job applications that he resigned from PSI.  Without any adverse employment action, PSI argues, Plaintiff's discrimination claims fail as a matter of law.  PSI relies on *Opsteen v. Keller Structures, Inc.*, 408 F.3d 390 (7th Cir. 2005).

In *Opsteen*, the plaintiff sued his former employer under the Americans with Disabilities Act (ADA).  The employer had refused to let the plaintiff work after a fall left the plaintiff with serious injuries and serious cognitive disabilities.  The plaintiff applied for and received disability benefits under both the Social Security program and the employer's ERISA plan.  In his applications for benefits, the plaintiff represented that he could no longer work.  In his ADA lawsuit, however, the plaintiff maintained that he could do his job with reasonable accommodations.  The district court entered judgment for the employer and the Seventh Circuit

affirmed. Discussing *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), Judge Easterbrook noted that "a person who applie[s] for disability benefits must live with the factual representations made to obtain them, and if these show inability to do the job then an ADA claim may be rejected without further inquiry." 408 F.3d at 392. The same is true for ERISA benefits. *Id.* The Seventh Circuit rejected the plaintiff's attempt "to maintain both gloomy and optimistic medical evaluations at the same time, and to benefit from different sources based on these incompatible positions." *Id.* "Litigants who take one view of the facts, and prevail, are equitably estopped to assert the opposite later." *Id.*

*Opsteen* is distinguishable from this case. Representations made in a job application about quitting a previous job are not the same as representations made to the federal government or an ERISA plan in order to obtain disability benefits. In *Opsteen*, the plaintiff applied for and received disability benefits based on representations that he could not do his job, yet at the same time sought damages under the ADA on the theory that he could do his job. Plaintiff's situation here is different. Plaintiff was not trying to "double-dip" the same way the plaintiff in *Opsteen* was. Rather, Plaintiff was lying (assuming, as the Court must at this juncture, that PSI terminated him) to potential future employers in order to secure employment after he parted ways with PSI. Furthermore, all but one of the cases cited in *Opsteen*'s discussion of this issue involve social security benefits and an ADA claim, neither of which are present here. The other case cited by *Opsteen*—*New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001)—involves judicial estoppel, which again is not an issue here.[2] The Court declines to read *Opsteen* as

---

[2] Only one reported Seventh Circuit decision has cited *Opsteen* and that case, like *Opsteen*, affirmed summary judgment for the employer defending against an ADA claim where the plaintiff had represented in a Social Security application for disability benefits that he was unable to work. *See Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 892 (7th Cir. 2005).

7

expansively as PSI does.  Certainly, PSI can use the job applications to impeach plaintiff's credibility at trial but they do not entitle PSI to judgment as a matter of law.

**D.     Title VII and 42 U.S.C. § 1981**

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race [] or national origin."  42 U.S.C. § 2000e-2(a)(1).  Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981.  Both Title VII and § 1981 discrimination claims are analyzed in the same manner.  *Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 637 n.1 (7th Cir. 2001).

*1.     Direct and Indirect Methods*

To prevail on a discrimination claim under Title VII or § 1981, Plaintiff may use the direct or indirect method.  Under the direct method, Plaintiff must present direct and/or circumstantial evidence of the employer's discriminatory intent.  Under the indirect method, Plaintiff must adhere to the familiar burden-shifting formula set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Bio*, 424 F.3d at 596.  Regardless of the method chosen, Plaintiff has the burden to demonstrate that a genuine issue of material fact exists for trial.  *Markel v. Bd. of Regents*, 276 F.3d 906, 910 (7th Cir. 2002).

Plaintiff cannot survive summary judgment using the direct method because he has not presented sufficient direct or circumstantial evidence of PSI's discriminatory intent. Plaintiff must therefore proceed under the indirect method, which requires him to establish a *prima facie* case of discrimination. *Bio*, 424 F.3d at 596. To make a *prima facie* case, Plaintiff must show that (1) he is a member of a protected class; (2) his work performance met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who are in a different class. *Id*. If Plaintiff fails to satisfy a single element of his *prima facie* case, his discrimination claim cannot survive summary judgment. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). If, on the other hand, Plaintiff establishes a *prima facie* claim for discrimination, the burden shifts to PSI to articulate a legitimate, non-discriminatory reason for its action. *See McDonnell Douglas*, 411 U.S. at 802–03. If PSI articulates a legitimate explanation, the burden shifts back to Plaintiff to prove that the proffered justification is a pretext for discrimination. *See Wade v. Lerner New York, Inc.*, 243 F.3d 319, 323 (7th Cir. 2001).

### 2.     *Similarly-Situated Employees Outside the Protected Class*

Regarding the indirect method, PSI does not dispute that Plaintiff meets the first three elements of a *prima facie* case. Rather, PSI contends that Plaintiff cannot satisfy the fourth element, *i.e.* that he was treated less favorably than similarly situated employees outside the protected class. A similarly-situated employee is someone "directly comparable" to Plaintiff "in all material aspects." *Herron v. DaimlerChrysler, Co.*, 388 F.3d 293, 300 (7th Cir. 2004). "This requires the plaintiff to show not only that the employees reported to the same supervisor, engaged in the same

conduct, and had the same qualifications, but also show that there were no 'differentiating or mitigating circumstances as would distinguish . . . the employer's treatment of them.'" *Ineichen v. Ameritech*, 410 F.3d 956, 960–61 (7th Cir. 2005) (citing *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000)).

PSI raises several arguments with respect to the "similarly situated" element.  First, PSI asserts that there can be no similarly-situated employee because Plaintiff is the only employee who took a company car without permission on a long-distance trip (as opposed to a local trip). Similarly-situated employees need only be "directly comparable . . . in all material aspects."  Like Plaintiff, Larmon and Franklin Smith were Associate Inspectors at PSI and they worked under Kirk Smith's supervision.  Kirk Smith testified that both Larmon and Franklin Smith had used company cars without obtaining prior permission and that they were not terminated for doing so.  Based on the record in this case, the Court does not find the distance traveled in the company car to be a material aspect.  Thus, Plaintiff need not show that the similarly-situated employees traveled distances comparable to Plaintiff when they were using the company car without permission.  To require this much would be hair-splitting.  Again, it is enough for Plaintiff to present evidence, as he has, that similarly-situated employees used a company car without permission and were not fired for doing so.[3]

Second, PSI argues that Plaintiff cannot point to any similarly-situated employee who took a company car without permission and who then became argumentative and combative when confronted with the company's procedure.  Plaintiff is not required to show the latter.  The parties

---

[3] Incidentally, although Detroit is "out-of-state," it is only a three-hour drive from Fort Wayne.  There may be a conceivable set of facts in which a comparison of distances traveled would be warranted (say, for example, if Plaintiff had taken the company car to California without permission).  However, this is not such a case.

10

dispute whether PSI terminated Plaintiff, and even if PSI did, the parties further dispute the reason PSI gave Plaintiff for doing so.  PSI says it fired Plaintiff for two reasons: 1) he violated company procedure regarding the use of company cars; and 2) insubordination.  Plaintiff, on the other hand, says he was fired for the first reason alone.  Construing the facts in a light most favorable to Plaintiff, PSI told Plaintiff he was fired solely because he failed to follow company procedure regarding the use of company cars.  This means that Plaintiff must merely present evidence of similarly-situated employees who failed to follow company procedure regarding the use of company cars and who were not fired.  Plaintiff has done so.  To survive summary judgment, Plaintiff need not show that similarly-situated employees also acted in an insubordinate manner.

PSI next argues (for the first time in its reply brief) that there is no evidence that Larmon and Franklin Smith are outside of Plaintiff's class.  A district court need not consider arguments raised for the first time in a reply brief.  *See Roberts v. Bd. of Educ.*, 25 F. Supp. 2d 866, 869 (N.D. Ill. 1998).  But even if the Court were to do so here, PSI's argument is not persuasive.  Plaintiff is Arab and Iraqi.  Kirk Smith testified that Larmon and Franklin Smith are Caucasian and American.  PSI claims that this is not enough because Plaintiff himself is a "Caucasian American."  PSI cites to *St. Francis College v. Al-Khazraji*, 481 U.S. 604 (1987) as authority for this proposition.

In *St. Francis*, an Iraqi-born Arab-American citizen brought a race discrimination claim against his employer under §1981 alleging he was denied tenure because of his Arab ethnicity.  The defendant-college argued that Arabs may not bring § 1981 claims because they are part of the Caucasian race.  The Supreme Court rejected this argument and held that an Arab may maintain a suit under § 1981.  The Supreme Court noted that although by "today's" [*i.e.* 1987] standards Arabs *may* be considered Caucasian, that was not the case when Congress passed § 1981.  481 U.S. at 610.

Because Arabs were not thought of as Caucasian at the time Congress passed § 1981, the Court held that the Arab professor could maintain an action under that statute. PSI selectively quotes dicta from *St. Francis*, which says "it may be that a variety of ethnic groups, including Arabs, are now considered to be within the Caucasian race." 481 U.S. at 610. Not only is this statement inconclusive, it does not accurately reflect the holding in *St. Francis*.

Based on the holding in *St. Francis* and the record in this case, including Kirk Smith's testimony that the two comparators are "Caucasian-American," Plaintiff has presented sufficient evidence that the similarly-situated employees were outside the protected class.

### 3.    *Pretext*

PSI argues that even if Plaintiff established a *prima facie* case of discrimination, PSI has articulated legitimate, non-discriminatory reasons for firing Plaintiff, namely that he failed to comply with company procedure regarding the use of company cars and that he then argued with his supervisor about it. By doing so, PSI shifts the burden back to Plaintiff to show that these reasons were pretextual.

To establish pretext, Plaintiff may once again use a direct or indirect method. *Wade*, 243 F.3d at 323. Under the direct method, Plaintiff must demonstrate "that an employer was more likely than not motivated by a discriminatory reason . . . ." *Id*. (citing *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir. 1999) (internal quotation marks omitted)). To prove pretext indirectly, Plaintiff must show that PSI's proffered reason is: (1) factually baseless; (2) not the actual motivation for the discipline; or (3) insufficient to motivate the adverse employment action. *See Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 784 (7th Cir. 2004). If Plaintiff "offers

specific evidence from which the finder of fact may reasonably infer that the proffered reasons do not represent the truth, the case then turns on the credibility of the witnesses." *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001) (quoting *Collier v. Budd Co.*, 66 F.3d 886, 893 (7th Cir. 1995)).

Plaintiff has presented sufficient evidence of pretext to survive summary judgment. The same evidence that satisfied the similarly-situated element also creates a triable issue of pretext. Based on the evidence regarding Larmon and Franklin Smith, a reasonable jury could conclude that PSI's proffered reasons for terminating Plaintiff were pretextual. *See Curry v. Menard, Inc.*, 270 F.3d 473, 479 (7th Cir. 2001) (same evidence used to establish similarly-situated element also created factual issue as to whether defendant's proffered reason for terminating plaintiff was a pretext); *Gordon*, 246 F.3d at 892 ("A showing that similarly situated employees belonging to a different racial group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, nondiscriminatory reason for the adverse job action was a pretext for racial discrimination."); *Russell v. Bd. of Trustees*, 243 F.3d 336, 342 (7th Cir. 2001) (female employee presented genuine issue of material fact as to whether employer's nondiscriminatory reason for suspending her was pretextual where employee pointed to similar incidents involving male employees and employer took no disciplinary action against them). In addition, the company car procedure at issue is not in writing and Plaintiff has presented evidence that PSI associates regularly used company cars for work-related travel on the weekends. Furthermore, a reasonable jury may not accept that Plaintiff's response to his employer's questioning him about the use of a company car, after Plaintiff had worked hard on a Saturday to satisfy a customer's emergency request, was sufficient to motivate his termination or the actual motivation for the termination.

13

**D.      Abandonment of Race Discrimination Claim**

PSI contends Plaintiff has abandoned his race discrimination claims because Plaintiff refers solely to his national origin claim in his summary judgment papers. The evidence that Plaintiff relies on to support his national origin claim substantially overlaps with the evidence that supports his race claim. The Court declines to elevate form over substance. Accordingly, the Court denies PSI's request for summary judgment on an abandonment theory.

**E.      Punitive Damages**

Finally, PSI argues that even if Plaintiff survives summary judgment, PSI cannot be held liable for punitive damages as a matter of law. A plaintiff may recover punitive damages under Title VII if the employer engaged in intentional discrimination and acted with malice or with reckless indifference to the federally protected rights. 42 U.S.C. § 2000e *et seq*. Plaintiff has a steep hill to climb to meet this standard. However, the Court prefers to reserve this issue for trial. If the evidence Plaintiff presents at trial does not create a factual issue that PSI acted with malice or reckless indifference to Plaintiff's rights, then the jury will not be instructed on punitive damages and Plaintiff will have no right to them. Of course, the converse is also true. For now, PSI's motion for summary judgment is denied as to punitive damages.

## CONCLUSION

For the foregoing reasons, Defendant Preferred Sourcing, Inc.'s Motion for Summary Judgment [DE 26] is **DENIED**.  In addition, Defendant Preferred Sourcing Inc.'s Motion for Leave To Amend its Answer [DE 38] is **GRANTED** and Plaintiff's Motion for Leave To File a Sur-Reply [DE 41] is **DENIED AS MOOT.**

**SO ORDERED** on February 24, 2006.

s/ Theresa L. Springmann
THERESA L. SPRINGMANN, JUDGE
UNITED STATES DISTRICT COURT